R. F. GROSS V. MARY JANE SHAFFER.—JAMES HOLLAND V. MARY JANE SHAFFER.—WILLIAM CHAMBERLAIN V. MARY JANE SHAFFER.

1. SUPREME COURT—*Case Not Dismissed.* Where an action of ejectment is pending in the supreme court on petition in error from the district court, and the plaintiff in error purchases the interest of the defendant in error in the property in controversy, but does not agree to dismiss his petition in error or to pay any costs in the case, *held,* that these facts do not of themselves confer upon the defendant the right to have the case dismissed from the supreme court.

2. AGENT; *Misleading and Erroneous Instruction.* Where the evidence tends to show that an owner of real estate by both words and acts has given authority to an agent to sell the same, and afterward the owner of the real estate disputes such authority, *held,* that it is generally misleading and erroneous for the court to select a few of the words only of those claimed to give such authority, and instruct the jury that these words do not confer any such authority upon the agent.

3. INSTRUCTION, *Misleading and Erroneous.* Where an owner of real estate authorizes a person to write to an agent authorizing the agent to sell the real estate, and the letter is so written, and the agent does sell such real estate, and afterward the owner of the real estate disputes the power of the agent to sell the same, *held,* that it is misleading and erroneous for the court to instruct the jury that "a delegated authority to an agent to sell real estate cannot be re-delegated — or, in other words, one agent cannot re-delegate the authority to perform the subject-matter of his agency."

### Error from Dickinson District Court.

THREE actions of ejectment, brought by *Shaffer*—one against *Gross,* one against *Holland,* and one against *Chamberlain.* Trial at the May Term, 1882, of the district court, and verdict and judgment in each case for the plaintiff. The defendants bring their several cases to this court. The opinion states the facts.

*Mahan & Burton,* and *McClure & Humphrey,* for plaintiffs in error.

*Stambaugh & Hurd,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: Mary Jane Shaffer brought three actions of ejectment in the district court of Dickinson county — one against R. F. Gross, one against James Holland, and one against William Chamberlain. The three cases were tried together before the court and a jury, and a verdict and judgment were rendered in each case in favor of the plaintiff and against the defendant therein; and the defendants now bring their several cases to this court, and ask for a reversal of the judgments therein. The plaintiff, defendant in error, now moves to dismiss the several cases from this court, upon the ground that the subject-matter thereof has been settled and compromised. The evidence, however, offered on the motion, while it shows that the defendants, plaintiffs in error, have severally purchased the plaintiff's interest in the land in controversy, yet it does not show that the subject-matter of the controversy in either case has been settled or compromised. There was no agreement on the part of the defendants, plaintiffs in error, to dismiss their actions in this court, or to pay the costs thereof, or indeed to pay any costs; but they simply agreed that they would pay the plaintiff the amount which they had agreed originally to pay for the lands, with $50 additional; and she agreed to execute, and did execute to them deeds for the lands. The motion to dismiss will be overruled.

We now come to the merits of the case. It appears from the record brought to this court that the lands in controversy are situated in Dickinson county, Kansas, and formerly belonged to Nathan Shaffer, who lived in Stark county, Ohio. In 1871, Nathan Shaffer died, leaving James S. Shaffer, his brother, as his executor, with power to sell the lands. T. C. Henry, a land agent, of Abilene, Dickinson county, Kansas, had for a number of years acted as the agent, first of Nathan Shaffer, and subsequently of James S. Shaffer, with respect to these lands. Henry had also, during the same time, acted as the agent with respect to certain other lands situated in Dickinson county, Kansas, belonging to some persons by the name of Johnson, who also resided in Stark county, Ohio.

All the correspondence with respect to both the Shaffer lands and the Johnson lands was carried on between T. C. Henry and Isaiah Johnson, who had an interest in the Johnson lands, and who was a near neighbor and friend of Nathan Shaffer during his lifetime, and of James S. Shaffer, his executor. Only a small portion of the correspondence between Henry and Johnson is preserved in the record brought to this court. It appears, however, that in 1877 or 1878, James S. Shaffer, the executor, met Isaiah Johnson, and requested him to write to their agent in Kansas, T. C. Henry, to sell the Dickinson county lands, the lands now in controversy, giving prices, etc. Mr. Johnson, who testified on the trial in this case, states the conversation as follows:

"He [Shaffer] said he would like to sell that land out west—no; he said he would like to 'get shut of' the land west, or sell it; and I said 'which?' and he said 'that out in Dickinson county.' He wanted to sell first; and he wanted me to write out to our agent, T. C. Henry, to sell it for us. Then I asked him what he wanted an acre. Then he told me. . . . He said that for the half-section he wanted $4, and for the quarter-section that is up by the school house, he wanted $5, as we always have to pay more taxes. . . . I agreed to write to him [Henry]. Question: With whom? Answer: With James S. Shaffer. I did agree to write immediately, but I did not. I do not think I wrote until sometime in the winter."

Afterward, Johnson wrote to Henry, and the letter is in the following words, to wit:

"Feb. 27, 1879, Alliance, Stark Co., Ohio.

"T. C. HENRY, *of Abilene:* I received your letter, dated Feb. 18, and noticed the contents carefully, and should answered sooner. The Johnsons land hant for sale now, but they would let some person farm for breaking. Shaffers aers—[heirs] in the name of Nathan Shaffer, their land is for sale. S. e. q. sec. 5, town 12, 4, for five dollars 25 cents per acre. E. 2. of sec. 7, town 12–4 for $4.25 per acre. In cash all down, discount the 25 cents per a., and if you take a notion to send me or Shaffers aers a letter in respect to the lands, please inform me what that quarter would bring on sec. 9, s. w. q. town 12–4. Please excuse for me not answer sooner.

ISAIAH JOHNSON, agt. for Johnson & Shaffer ayers."

In pursuance of this letter from Johnson, Henry, in the spring of 1879, sold the lands in controversy to the present defendants, within the terms and the instructions of the letter; and the purchasers soon thereafter, in pursuance of the sale, took possession of the lands, and made lasting and valuable improvements thereon.  Henry forwarded to the executor, through Mr. Johnson, deeds in blank to be executed by Shaffer, and also notes and mortgages to secure the deferred payments.  *These reached the executor's hands,* and have not been returned.  The executor did not, so far as is known, execute the deeds to these purchasers, and he never rescinded the sale nor informed his agent, T. C. Henry, nor the purchasers of the land, that he (Shaffer) was not satisfied with the sales, although he afterward had correspondence with Henry.  In 1881 the executor executed a deed to these lands to Mary J. Shaffer, the present plaintiff, defendant in error, who was a sister of the executor, and had knowledge at the time of the previous sales to the present defendants.

On the trial, the court gave the jury the following among other instructions:

"7. And further: That the expression 'I will sell,' or 'I want to get shut of the lands and will sell,' on specified terms alone does not confer any authority on the agent to make a contract of sale.

"8. And further: A correspondence with a real-estate agent concerning the lands and prices and terms of sale, does not alone confer any authority upon him to make a contract for the sale of the land.

"9. And further: A delegated authority to an agent to sell real estate — not including in this term an executor — a delegated authority to an agent to sell real estate cannot be re-delegated; or, in other words, one agent cannot re-delegate the authority to another to perform the subject-matter of his agency."

We think that instruction No. 7, although perhaps good law in the abstract, was misleading in its character and erroneous in the present case; for there was a great deal of evidence in the case besides the words "I will sell," or "I want to get shut of the lands and will sell," which tended to show that

power was conferred upon the agent, T. C. Henry, to sell the lands; and this evidence consisted of evidence of both words and acts.

Instruction No. 9 is also erroneous. The instruction seems to be based upon the idea that Johnson was the party appointed by Shaffer to sell the lands, and that he re-delegated his power to Henry; whereas, the facts of the case show that such was not the nature of the transaction. Mr. Henry was the party who was authorized to sell, and Mr. Johnson was the party who was authorized to communicate this authority to Henry. And there was really no re-delegation of agency or authority involved in the transaction. Mr. Johnson was to perform one part in the transaction, and Mr. Henry was to perform an entirely different part. We do not think the evidence was such as to compel the jury to find in favor of the defendants, but still we think it was such that the jury might have found in their favor if they had not been misled by the instructions of the court.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.