Haines v. Goodlander.

---

MRS. H. T. HAINES v. E. C. GOODLANDER,
*as Executrix, etc.*
No. 14,312.   (84 Pac. 986.)
SYLLABUS BY THE COURT.

1. EVIDENCE—*Action on a Lost Note—Deceased Maker—Proof of Plaintiff's Financial Condition.* In an action upon a note for a large amount purporting to have been given by one since deceased, where the plaintiff claimed that the note was accidentally destroyed or lost but that it represented a *bona fide* loan of money by her to the deceased, and the claim for the defendant was that no note was in fact ever given and that the plaintiff's claim was fictitious and fraudulent, testimony that plaintiff was financially embarrassed about the time the note was claimed to have been given and was without the means to make the loan was properly received; and *held*, further, that the testimony was sufficient to uphold the verdict in favor of defendant.

2. ——— *Opinion Testimony—Basis of a Judicial Finding.* A witness who admits that he does not know the amount of certain checks should not be allowed to give his estimate, as a judicial finding cannot be based upon mere conjecture.

3. ——— *Complicated Accounts—Summary by a Competent*

*Witness.* Where book entries, vouchers or accounts are volu-minous or complicated, the testimony of a competent witness who has made an examination and summary of them may ordinarily be received; but in the present case it does not appear that either the original or the summary offered was competent evidence.

4. ——— *Self-serving Declarations.* To meet the testimony that the plaintiff was not financially able to make the loan in question she offered to show that at one time she had proposed to pay a large indebtedness to one of her creditors, but that payment was declined. *Held,* that this was a self-serving declaration, and it was properly excluded.

5. INSTRUCTIONS—*Comment upon the Evidence.* While the trial court may not comment upon the weight of the evidence submitted to the jury, nor assume the existence or non-existence of controverted facts, it is not precluded from referring to parts or lines of evidence offered by the respective parties and making concrete applications of the law to them.

6. ——— *Formulating Instructions—Limitations of the Court.* The court should be careful not to mislead the jury by singling out and giving undue prominence to a particular fact in the case, nor by unduly emphasizing the contentions of either party, but it is often necessary and proper for the court to speak of important features in the evidence, and advise the jury as to the rules of law applicable to such facts.

Error from Bourbon district court; WALTER L. SIMONS, judge. Opinion filed March 10, 1906. Affirmed.

*W. R. Biddle,* and *A. M. Keene,* for plaintiff in error; *Keene & Gates,* and *Biddle & Lardner,* of counsel.

*W. C. Perry, J. I. Sheppard,* and *John H. Crain,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: Several months after the death of C. W. Goodlander, H. T. Haines and his wife presented a joint demand in the probate court against the Goodlander estate for $28,368.90, founded upon a note said to have been executed by C. W. Goodlander on August 2, 1901, for $26,000, payable to the order of Mrs. H. T. Haines, one year after date, with interest at eight per cent. per annum. Haines and his wife claimed that the

note had been accidentally destroyed and therefore a copy of it was not set forth. The execution of the note and the validity of the demand were contested by the executrix of the estate before a jury, who found against the claimants. An appeal was taken to the district court, where another trial was had with a jury, and again the verdict was against the claimants.

The first objection is that the verdict is not sustained by sufficient evidence. This point may be easily determined. There is testimony tending to discredit the claim that the note was ever executed by Goodlander. Aside from the great disproportion between the amount of the note and Mrs. Haines's financial resources, there is testimony to the effect that she was not only without means but was largely in debt when she began business in Fort Scott; that during the time she claims to have accumulated the money loaned her business was in fact unprofitable; and that a great deal of the time she was financially embarrassed, and from time to time borrowed money to meet her most pressing obligations. Mention might be made of testimony that she never deposited this great amount of money in a bank, but that it was kept in insecure places about her house, and carried with her when she traveled. She said the note was burned accidentally the day of Goodlander's burial, but she did not present her claim to the representative of the estate, nor mention the burning of the note to any one, not even her husband, for fifty days after the claimed destruction. There were other circumstances which may have led the jury to discredit the claim that a loan was made, or that a note existed; and, besides, quite a large number of her neighbors gave impeaching testimony against her. It is true that several witnesses were produced by her who said they had seen the note, or heard an acknowledgment of its existence, but the accuracy of their observation as well as the credibility of their testimony were questions for the jury. The verdict, which in

effect rejected the theory and testimony of the plaintiff, is not without substantial support.

Many objections were made to the rulings upon testimony, some of which are not sufficiently material to require attention.

Complaint is made of the exclusion of the testimony of a cashier of a railroad company as to the approximate amount of checks delivered by him to Mrs. Haines. The checks were in favor of her husband, who had been running a boarding-train for the railroad company, and who at first claimed to be a joint owner with Mrs. Haines of the note in suit. Later in the litigation, and before the final trial, Mr. Haines disclaimed any interest in the note, withdrew from the action, and was thereafter to be regarded as an outside party. Being no longer a party to the action, his transactions with others had no direct bearing upon the case. Again, the witness stated he did not know the amount of the checks, and a mere conjecture or surmise cannot be made the basis of a judicial finding. The court did allow the plaintiff to show that her husband's checks were delivered to her, and, if it had been claimed that the money loaned to Goodlander was derived by her from that source, it might have been shown by competent evidence. The fact that the checks may have come to or passed through her hands does not of itself prove that the money represented in them belonged to her. No testimony as to her own earnings or accumulations was excluded.

The testimony of the auditor of the railroad company as to payments made to Mr. Haines, as shown by the books, was inadmissible for the same reason that applied to the exclusion of the cashier's testimony. It is true, as plaintiff claims, that where book entries, vouchers or accounts are voluminous or complicated, the testimony of a competent witness who has made an examination and summary of them may be received, but the evidence of the auditor was excluded, not because it was not the best evidence, but because it was

not competent to show the pecuniary means of the plaintiff.

Objection is made because plaintiff was not permitted to testify whether she had any papers in her hands when she left the presence of Goodlander on February 2, 1900. As he had died, of course she could not testify to any transaction had personally with him. What she was carrying after her visit to Goodlander can hardly be regarded as a personal transaction with him, but it did not appear that the testimony invited was material or competent. The character of the papers which she had was not suggested, the time mentioned appears to have been long prior to the date of the note in question, and there was no offer to prove that the papers had any connection with the alleged loan.

There is no reason to complain of the testimony of Comingore, who professed to have seen the note in suit in Mrs. Haines's possession. Many questions were evidently rejected because they were suggestive and not in proper form. Answers were evidently excluded because not responsive or because they were conclusions or repetitions. In discriminating rulings the court undertook to confine the testimony within due bounds, and permitted the witness to state pertinent facts which he assumed to know as to the size and form of the paper on which words and figures were printed and written; that it was dated; that it had Mrs. Haines's name on it; that it was for a large sum of money—more than $20,000; and that the name of C. W. Goodlander was at the bottom of it. Proper questions as to the contents of the paper were allowed, but of course the witness was not permitted to state the ultimate fact that what he saw was a note, nor to give other conclusions of fact.

The testimony of Copeland as to an admission by Goodlander that he had obtained a loan of $25,000 was not competent. No identity was shown between that loan and the note in suit.

Complaint is made that part of an answer of the witness Reese was excluded. So much of it as alluded to a certain letter was properly rejected. The statement that "to the best of my recollection the name of C. W. Goodlander was at the bottom of the note" might have been admitted, but was probably excluded because of the uncertainty implied by the language of the witness. Later, however, the witness stated in no uncertain terms that the name of C. W. Goodlander was at the bottom of the note, and this testimony the court refused to strike out.

The witness Shaffer was asked to give her opinion as to whether the signature of C. W. Goodlander on a letter was in the same handwriting as his signature on the note. The offer was properly rejected because she was not shown to be a competent witness, and had admitted that she did not know Goodlander's handwriting.

In order to meet the testimony of her financial inability to make the loan, plaintiff offered to show that in July, 1901, she had proposed to pay to one of her creditors a debt of $4000, but that the payment was not accepted. This was a self-serving declaration, and was rightly refused.

Complaint is made of testimony to the effect that plaintiff had stated at different times, and in various ways, that she was losing money in her business—was hard up and without means to meet accruing debts. Whether her claim, of which no written evidence was in existence, was a valid or a fraudulent one was a leading issue in the case. It was made prominent also by her counsel in his opening statement to the jury when he said that plaintiff would prove, not only that the claim was honest, but that she was financially able to make the loan from money earned and otherwise acquired. Under the circumstances a wide scope of inquiry was justified, and it does not appear to have been unduly extended by the trial court.

Other objections are made to the rulings on the ad-

Haines v. Goodlander.

mission of testimony, but they are not deemed to be material, and it is clear that they furnish no grounds for reversal.

It is contended that in submitting the case to the jury the court assumed the existence of facts which were in dispute, and gave undue prominence to some circumstances of the case. It is said that the court, in the fifth instruction, assumed that admissions had been made respecting losses sustained by the plaintiff in conducting a railroad eating-house, and also of the acceptance of money from the railroad company to make up such losses. It is not easy to say that there was a real dispute as to admissions of this character, but the court did not in fact assume that such admissions had been made. It charged the jury to consider "for what you may think it is worth the evidence as to admissions claimed by the defendant to have been made by the claimant, including the claims, if any," which were then enumerated. As will be observed, the court spoke of the claim of defendant as to certain admissions, and left the jury to decide if any admissions had been made.

Complaint is made of the sixth instruction given by the court, which is as follows:

"You are instructed that unless you believe from a preponderance of the evidence that 'Exhibit A,' introduced in evidence, is a portion of a letter written by C. W. Goodlander to Mrs. H. T. Haines, and that in said letter there was a statement concerning the alleged note, then you should wholly disregard said 'Exhibit A.' If you believe from a preponderance of the evidence that 'Exhibit A' is a portion of a letter written by C. W. Goodlander to Sam W. Webb, then you will disregard the testimony for the plaintiff as to the contents of what she claims to be the missing part of a letter written by C. W. Goodlander to her."

No error was committed in giving this instruction. On the one side it was said that the letter, only a fragment of which was preserved, contained an admission by Goodlander that he had given the note to Mrs.

Haines.   On the other side it was claimed that it was a portion of a letter written by Goodlander to Webb, which in some way had fallen into the hands of Mrs. Haines.   The portion of the letter preserved made no reference to the note in suit, but Mrs. Haines claimed that the missing part did refer to the note, and offered proof to that effect.   If the letter was not written to Mrs. Haines, and made no reference to the note, it had no relevancy to the case, and it was the duty of the court to take from the consideration of the jury the contents of a letter which had no bearing upon the case.

In neither of the instructions criticized did the court invade the province of the jury, or violate the rules governing instructions.   While the court may not comment upon the weight of the evidence, nor assume the existence or non-existence of controverted facts, it is not precluded from referring to the evidence in the case.   It is not improper to assume the existence of conceded facts, nor to call the attention of the jury to alleged facts which are not in dispute; and, if a fact essential to a recovery is lacking, the court, on application, is required even to take the case from the jury. The court should present the theories of the respective parties, and in doing so may refer to the lines of evidence introduced by the parties and upon which each relies, carefully refraining from expressing an opinion as to what the facts do or do not prove and from giving any intimation from which the opinion of the court might be inferred.   Instead of stating abstract principles of law, the court should aid the jury by making a concrete application of the law to the facts in issue which there is evidence to support.   While the court should be careful not to mislead the jury by singling out and giving undue prominence to. a particular fact in a case or unduly emphasizing the contentions of either party, yet there is no reason why the court should not in some cases refer to particular parts of the evidence and advise the jury as to the rules of law

Haines v. Goodlander.

applicable to such facts. Frequently the court can properly and effectually refer to the evidence to illustrate the statements of law given to guide the jury.

The reference in the sixth instruction to the letter did not offend by giving undue prominence to a particular fact. If the letter was written to Mrs. Haines its contents were pertinent and important, but if it was written to Webb, and did not mention the note in question, its contents had no bearing upon the case and could not be given any consideration. The contentions of the two parties with respect to the letter were fairly stated, and the instruction was appropriate. Neither the repeated references to the "alleged note" and "alleged claim" nor the repetitions of the phrase "preponderance of the evidence" are deemed to be prejudicial.

The instruction as to impeaching evidence was given for the benefit of the plaintiff, and is not erroneous.

It is argued that in charging the jury as to the implied consideration of written contracts the court left the construction of a statute to the jury. There was a quotation from the statute on the subject; but it would be difficult to make a clearer statement of the rule than is contained in the statute, and the adoption and use of the statutory phrase in the instruction is not open to criticism.

We think the theories of the contending parties were fairly and impartially presented to the jury, and that none of the objections to the instructions affords ground for reversal.

Not all of the points raised by plaintiff have been mentioned, and perhaps some of those mentioned did not require special comment, but all have been carefully examined, and we discover no grounds for setting aside the verdict of the jury, nor the judgment based upon it. The judgment is affirmed.

All the Justices concurring.